AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
for the
Southern District of Ohio

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )
) Case No. 1:20-mj-477
THE CELLULAR TELEPHONE ASSIGNED CALL )
NUMBER 702-884-8978 (Sprint) )
)

**APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS**

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
See Attachment A.   Because the government has satisfied the requirements of 18 U.S.C. § 3122, this warrant also constitutes an order under 18 U.S.C. § 3123.
located in the ___Southern___ District of ___Ohio___, there is now concealed *(identify the person or describe the property to be seized)*:
See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. 841(a)(1) | Distribution of a Controlled Substance |
| 21 U.S.C. 846 | Conspiracy to Distribute a Controlled Substance |

The application is based on these facts:
See attached affidavit.

☑ Continued on the attached sheet.
☑ Delayed notice of __30__ days *(give exact ending date if more than 30 days:* _____ *) is requested under* 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Matthew Wenker, FBI Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
___FaceTime Video Conference___ *(specify reliable electronic means)*.

Date: __July 1, 2002__

*Judge's signature*

City and state: __Cincinnati, Ohio__   Hon. Karen L. Litkovitz, U.S. Magistrate Judge
*Printed name and title*

## ATTACHMENT A

### Property to Be Searched

1. The cellular telephone assigned call number 702-884-8978, whose wireless service provider is Sprint, a company headquartered 6480 Sprint Parkway, Overland Park, KS.

2. Records and information associated with the Target Cell Phone that is within the possession, custody, or control of Sprint.

## ATTACHMENT B

### Particular Things to be Seized

**I.     Information to be Disclosed by the Provider**

All information about the location of the Target Cell Phone described in Attachment A for a period of thirty days, during all times of day and night. "Information about the location of the Target Cell Phone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephone described in Attachment A.

To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of **SPRINT**. **SPRINT** is required to disclose the Location Information to the government. In addition, **SPRINT** must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with **SPRINT**'s services, including by initiating a signal to determine the location of the Target Cell Phone on **SPRINT**'s network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate **SPRINT** for reasonable expenses incurred in furnishing such facilities or assistance.

This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

## AO 106 ATTACHMENT

See Affidavit in Support of an Application for a Search Warrant. To ensure technical compliance with 18 U.S.C. §§ 3121-3127, the warrant will also function as a pen register order. I thus certify that the information likely to be obtained is relevant to an ongoing criminal investigation conducted by the Federal Bureau of Investigation. *See* 18 U.S.C. §§ 3122(b), 3123(b).

I declare under penalty of perjury that the foregoing is true and correct.

July 1, 2020
DATE

/s/*Ashley N. Brucato*
ASHLEY N. BRUCATO
Assistant United States Attorney

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF THE CELLULAR TELEPHONE ASSIGNED CALL NUMBER 702-884-8978 (Sprint) | Case No. 1:20-mj-477<br><br>**Filed Under Seal** |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Matthew F. Wenker, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A) for information about the location of the cellular telephone assigned call number 702-884-8978, with an unknown listed subscriber(s) (the "Target Cell Phone"), whose service provider is Sprint, a wireless telephone service provider headquartered at 6480 Sprint Parkway, Overland Park, KS, 66251. The Target Cell Phone is described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.

2. Because this warrant seeks the prospective collection of information, including cell-site location information, that may fall within the statutory definitions of information collected by a "pen register" and/or "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), the requested warrant is designed to also comply with the Pen Register Act. *See* 18 U.S.C. §§ 3121-3127. The requested warrant therefore includes all the information required to be included in an order pursuant to that statute. *See* 18 U.S.C. § 3123(b)(1).

3. I am a Special Agent (SA) with the Federal Bureau of Investigation (FBI), and have been so employed since July of 2011. I have conducted investigations into criminal enterprises,

narcotics investigations, organized crime, and violent crimes to include unlawful possession and possession with the intent to distribute controlled substances, as well as the associated conspiracies in violation of Title 21, United States Code, Sections 841(a)(1) and 846. My FBI investigative experience is derived from working on the: Mexican Border in Sierra Vista, Arizona; the Navajo Nation Native American Reservation in Gallup, New Mexico; San Juan, Puerto Rico; and Cincinnati, Ohio. Before being employed as a SA with the FBI, I was a Special Operations U.S. Army Ranger with four Combat Deployments to Afghanistan and Iraq. My formal education consists of a Bachelor of Accounting and a Master of Business Administration (MBA).

4. In my experiences I have had the opportunity to monitor, listen, and review transcripts pertaining to communications which involved the trafficking of illegal narcotics by persons who attempted to thwart law enforcement by speaking in some sort of coded language. I have also participated in numerous post arrest and proffer interviews of individuals with knowledge of illegal drug trafficking that had been involved in using coded language and were familiar with day to day operations utilized by those involved in the illegal trafficking of narcotics. Through these interviews and other investigative experiences, I have gained knowledge regarding the various methods, techniques, codes, and/or jargon utilized by illegal drug traffickers in the course of conducting their criminal activities.

5. In addition, I have utilized confidential informants, pen registers, toll records, physical surveillances, and electronic surveillances in the process of my investigations to further my knowledge regarding the operations of those involved in illegal narcotics distribution. I have further been the affiant on Federal search warrants, have testified in Grand Jury proceedings, and have written reports during the course of conducting investigations.

6. Through my training, experiences, and communications with other experienced agents

and officers who conduct drug investigations, I have become familiar with methods used by drug traffickers to import, transport, store, collect, and safeguard illegal narcotics. Additionally, my training and experiences have given me knowledge regarding the methods used by drug traffickers to communicate with each other, to launder drug proceeds, and to thwart efforts by law enforcement to detect their illegal activities. I also have gained intelligence through my experiences, and through conversations with others who have conducted drug-related investigations, in regard to methods by which drug traffickers package, prepare, and distribute narcotics.

7. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

8. Based on the facts set forth in this affidavit, there is probable cause to believe that violations of 21 U.S.C. §§ 846 and 841(a)(1) have been committed, are being committed, and will be committed by TYLER TUCKER. There is also probable cause to believe that the location information described in Attachment B will constitute evidence of these criminal violations and will lead to the identification of individuals who are engaged in the commission of these offenses.

9. The court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated, see 18 U.S.C. § 2711(3)(A)(i).

**PROBABLE CAUSE**

10. During 2018, federal, state, and local law enforcement learned of a major drug trafficking organization (DTO) operating throughout the greater Cincinnati region. The DTO is led by Steffen Roberson aka "Worm" who primarily lives in Atlanta, Georgia. Dozens of interviews of subjects, cooperating defendants, sources of information, and confidential informants revealed that Steffen Roberson has a large network operating under his command and control which was generating millions of dollars annually from the sale of narcotics, with the primary drug sold being fentanyl. Multiple recent homicides throughout Cincinnati are alleged to be "hits" carried out at the direction of Roberson and his DTO members. Recent information has been developed by agents indicate that DAVID HODGES and TYLER TUCKER have been supplying fentanyl to members of the Roberson DTO.

11. On March 31, 2020, an FBI source of information (SOI) advised that DAVID HODGES, aka Twenty, had strong fentanyl for sale and was supplying higher level drug traffickers around the Cincinnati, Ohio area including Roberson DTO members. The source of information also advised that TYLER TUCKER was working with HODGES distributing the fentanyl. The information provided by SOI to date has been independently corroborated and has been found to be accurate and reliable. The SOI is providing information for case considerations.

12. On April 1, 2020, a Confidential Human Source of the FBI (CHS) advised that HODGES was supplying large amounts of high-quality fentanyl in Cincinnati. CHS further advised that TUCKER was working for HODGES and was selling ounces of fentanyl for $3,500 per ounce. CHS further advised that TUCKER was utilizing cell phone number 702-884-8978 **(TARGET TELEPHONE)**. The CHS has provided information in the past which has been found to be accurate and reliable and resulted in the arrest and conviction of drug traffickers, the seizure of controlled substances, and the proceeds from the sales of controlled substances. Information

provided by CHS has been independently corroborated and has been found to be accurate and reliable.

13. On April 2, 2020, an administrative subpoena was issued to Sprint for subscriber information and call detail records for the **TARGET TELEPHONE**. Sprint provided the subscriber for the **TARGET TELEPHONE** was Joseph Johnson, 6111 Scarlet Drive, Cincinnati, Ohio.

14. On May 20, 2020, FBI Special Agent (SA) Matt Wenker and Task Force Officer (TFO) Jason O'Brien met with the CHS at a predetermined location to make a controlled purchase of ½ ounce of heroin/fentanyl from TUCKER. The CHS person and vehicle were searched and no contraband was located. CHS was equipped with an audio video recording and transmitting device and provided $1500.00 of United States currency. CHS coordinated the drug transaction with TUCKER by calling the **TARGET TELEPHONE**. The CHS and TUCKER agreed to meet at the parking lot at 4777 Kenard Avenue.

15. While under constant surveillance, CHS traveled to the parking lot at 4777 Kenard Avenue, Cincinnati, Ohio, 45232. Surveillance units then observed TUCKER arrive at the Kroger at approximately 2:31 pm, driving a Buick Lacrosse without any rear license plate and with heavy window tint. TUCKER went to the CHS vehicle and exchanged the suspected heroin/fentanyl mixture with the CHS for the $1,500 cash. After the transaction, CHS drove to a predetermined location while under constant surveillance. The CHS met with SA Wenker and TFO O'Brien and immediately turned over approximately ½ ounce of suspected heroin/fentanyl mixture. The CHS person and vehicle were searched and no contraband was located. The drug evidence was submitted to the Hamilton County Coroner's Lab for examination which found the drug evidence to contain heroin and fentanyl.

16. On June 8, 2020, FBI SA Matthew Wenker and SA Anthony Ott met with the CHS to make a controlled purchase of several grams of, what TUCKER described to be a different batch of very strong, heroin/fentanyl mixture. The CHS person and vehicle were searched and no contraband was located. The CHS was equipped with an audio video recording and transmitting device and provided $1,000.00 of United States currency. CHS coordinated the drug transaction with TUCKER by calling the **TARGET TELEPHONE**. The CHS and TUCKER agreed to meet at the parking lot at 1199 Kemper Meadow Drive, Cincinnati, Ohio 45240.

17. While under constant surveillance, CHS traveled to the parking lot. Surveillance units then observed TUCKER arrive at the 1199 Kemper Meadow Drive parking lot driving a Buick Lacrosse now with Ohio license plate JBE-5464. TUCKER went to the CHS vehicle and exchanged the suspected heroin/fentanyl mixture with the CHS for the $1,000 cash. After the transaction, CHS drove to a predetermined location while under constant surveillance. The CHS met with SA Matthew Wenker and SA Anthony Ott and immediately turned over three bags of suspected heroin/fentanyl mixture. The CHS person and vehicle were searched and no contraband was located. The drug evidence was submitted to the Hamilton County Coroner's Lab for examination which found the drug evidence to contain heroin and fentanyl.

18. The above documented surveillances and controlled purchases of suspected heroin/fentanyl, I believe TUCKER is a drug distributor and utilizes the **TARGET TELEPHONE** to coordinate drug transactions. Based on my training, experience, and conversations with law enforcement officers, I believe the location of the **TARGET TELEPHONE** is vital and necessary for investigators to track TUCKER. Furthermore, I believe the location of the **TARGET TELEPHONE** will allow investigators to establish a criminal pattern and identify associates of TUCKER who are also involved in drug trafficking.

19. Based on my training, experience, knowledge of this investigation, along with the aforementioned facts and reporting, I believe there is probable cause to show that the **TARGET TELEPHONE** is being used to commit federal narcotics offenses and the information requested will assist the FBI in identifying co-conspirators, stash locations, and additional cellular devices owned and operated by the target subjects.

20. Based on my training, experience, and discussions with other law enforcement officers/agents, activities observed during surveillance, and reliable CHS information, I believe that TUCKER is utilizing the **TARGET TELEPHONE** in furtherance of facilitating illicit narcotics transactions with other as-yet-unidentified individuals, that those transactions are federal narcotics offenses, and that the information requested will assist the FBI in identifying co-conspirators and additional cellular devices owned and operated by the targeted subjects.

21. In my training and experience, I have learned that Sprint is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including E-911 Phase II data, also known as GPS data or latitude-longitude data and cell-site data, also known as "tower/face information" or cell tower/sector records. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower

closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise that E-911 Phase II data.

22. Based on my training and experience, I know that Sprint can collect E-911 Phase II data about the location of the Target Cell Phone, including by initiating a signal to determine the location of the Target Cell Phone on Sprint's Wireless's network or with such other reference points as may be reasonably available.

23. Based on my training and experience, I know that Sprint can collect cell-site data about the Target Cell Phone. Based on my training and experience, I know that for each communication a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer connected at the end of the communication; and (5) the duration of the communication. I also know that companies such as Sprint typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business in order to use this information for various business-related purposes.

## AUTHORIZATION REQUEST

24. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c).

25. I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days after the collection authorized by the warrant has been completed. There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the Target

Cell Phone would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. See 18 U.S.C. § 3103a(b)(1). As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. See 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. See 18 U.S.C. § 3103a(b)(2).

26. I further request that the Court direct Sprint to disclose to the government any information described in Attachment B that is within the possession, custody, or control of Sprint. I also request that the Court direct Sprint to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with Sprint's services, including by initiating a signal to determine the location of the Target Cell Phone on Sprint's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall reasonably compensate Sprint for reasonable expenses incurred in furnishing such facilities or assistance.

27. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the Target Cell Phone outside of daytime hours.

28. I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the

targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

Respectfully submitted,

Matthew F. Wenker
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me on July 1, 2020.

HONORABLE KAREN L. LITKOVITZ
UNITED STATES MAGISTRATE JUDGE